UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARCUS MOSLEY,<br>    Plaintiff, | )<br>)<br>) |
| v. | )   CAUSE NO.: 2:11-CV-435-JVB-PRC |
| TIMOTHY ARMSTRONG,<br>    Defendant. | )<br>)<br>) |

**FINDINGS, REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE PURSUANT TO**
**28 U.S.C. § 636(b)(1)(B) & (C)**

This matter is before the Court on a Motion of Defendant Timothy Armstrong to Dismiss for Lack of Subject Matter Jurisdiction [DE 16], filed on June 18, 2012. Plaintiff Marcus Mosley has not filed a response, and the time to do so has passed.

On September 25, 2012, District Court Judge Joseph Van Bokkelen entered an Order [DE 19], referring this matter to the undersigned Magistrate Judge for a report and recommendation on the instant motion pursuant to 28 U.S.C. § 636(b)(1)(B). This Report constitutes the undersigned Magistrate Judge's combined proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

For the following reasons, the Court recommends that Judge Van Bokkelen deny the motion.

**PROCEDURAL BACKGROUND**

On November 3, 2011, Mr. Mosley filed a Petition for an Order for Protection and Request for a Hearing–Filed by Person Seeking Protection ("Petition for Protective Order") against Mr. Armstrong in the Lake Superior Court. In the Petition for Protective Order, Mr. Mosley checked the box indicating that he filed the petition for himself because he is or has been a victim of stalking and that Mr. Armstrong had committed stalking against him. Mr. Mosley checked the following three pre-printed options to describe how Mr. Armstrong was stalking him: (1) "the Respondent

threatened to cause physical harm to me;" (2) "the Respondent placed me in fear of physical harm;" and (3) "the Respondent committed stalking against me."  Petition, § 7.

In the Petition for Protective Order, Mr. Mosley indicates that there are two pending Equal Employment Opportunity Commission cases involving Mr. Armstrong and himself.

In the section of the Petition for Protective Order asking Mr. Mosley to describe the relevant incidents, Mr. Mosley indicates that the first event took place on July 21, 2010, at his residence: "Mr. Armstrong called my home, cursed me and threatened he was going to get me." Petition, § 8. He indicates that he and Thereasa Mosley were present during the incident.

Mr. Mosley identifies the second event as taking place in February 2011, by "mail," when "Mr. Armstrong submitted a[sic] ficticious[sic] dates and lied to attempt the agency to suspend me." *Id*. He indicates that no one else was present.

Finally, Mr. Mosley identifies a third event that occurred on October 27, 2011, at "I-94," explaining that "Tim Armstrong - said he was in the/and[sic] or around and decided to stop & talk. Tim Armstrong works in Springfield IL office."  *Id*.  He indicates that no one else was present.

Mr. Mosley selected three of the pre-printed forms of relief listed on the Petition for Protective Order, asking the Court to prohibit Mr. Armstrong (1) "from committing, or threatening to commit, acts of domestic or family violence, stalking, or sex offenses against me;" (2) "from committing, or threatening to commit, acts of domestic or family violence, stalking, or sex offenses against my family or household members . . . ;" and (3) "from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with me." *Id*.

On November 23, 2011, Mr. Armstrong removed the Petition for Protective Order to this Court pursuant to 28 U.S.C. § 1442(a)(1), asserting that this is a civil action against him for his alleged acts under color of an office of the United States Department of Transportation, an agency

of the United States. In the Notice of Removal, Mr. Armstrong indicates that he received at his place of federal employment by certified mail a Summons, the Petition for Protection Order, and an Order of the Court directing him to appear for a hearing at Lake Superior Court on November 29, 2011.

On January 12, 2012, Judge Van Bokkelen referred the Petition for Protective Order to the undersigned Magistrate Judge for a report and recommendation. That same date, the Petition for Protective Order was set for a hearing for January 20, 2012, before the undersigned Magistrate Judge.

On January 20, 2012, counsel for Mr. Armstrong appeared at the hearing; Mr. Mosley did not appear. Counsel for Mr. Armstrong produced correspondence from Mr. Mosley indicating that a medical condition may have been the reason for Mr. Mosley's failure to attend the hearing. The correspondence, signed by Mr. Mosley, was addressed to Judge Van Bokkelen and to Judge Cherry and the contents of the letter were read into the record: "I apologize that I will not attend the hearing you scheduled for me. I was in the hospital the past five days and I do not feel up to arguing in good faith opposition with management. I appreciate your time and consideration to the foregoing." (Jan. 20, 2012 hearing transcript). At the hearing, counsel for Mr. Armstrong asserted that the Civil Service Reform Act applies in this case and asked the Court for leave to file a dispositive motion. The Court granted the request and set a dispositive motion deadline for Mr. Armstrong.

On March 29, 2012, Mr. Armstrong filed the a Motion to Dismiss and a memorandum in support, seeking dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In addition, he also served on Mr. Mosley a "Notice," advising Mr. Mosley of his right to file a brief in response to the motion. Mr. Mosley did not file a response. Judge Van Bokkelen issued an order on April 18, 2012, referring the Motion to Dismiss to the undersigned Magistrate Judge for a report

and recommendation. On May 30, 2012, the undersigned issued a Findings, Report, and Recommendation of United States Magistrate Judge Pursuant to 28 U.S.C. § 636(b)(1)(B) & (C), recommending that Judge Van Bokkelen deny the Motion to Dismiss.

On June 16, 2012, Mr. Armstrong filed the instant Motion to Dismiss for Lack of Subject-Matter Jurisdiction and a memorandum in support. Again, Mr. Armstrong also served on Mr. Mosley a "Notice," advising Mr. Mosley of his right to file a brief in response to the motion and noting that Local Rule 7-1 requires Mr. Mosley to file his response within fourteen days of when the motion was served on him plus three days for mailing. The Notice further indicated that the Court must receive the response by that date, that the response must be signed, and that Mr. Mosley must mail a copy of the response to counsel for Mr. Armstrong. Finally, it advises that, if Mr. Mosley does not file a response, the Court may decide the motion based only on Mr. Armstrong's brief and that if the Court grants the motion, Mr. Mosley will lose this lawsuit. Mr. Mosley did not file a response.

On September 25, 2012, Judge Van Bokkelen adopted the May 30, 2012 Report and Recommendation and denied the March 29, 2012 Motion to Dismiss. That same date, Judge Van Bokkelen referred the instant June 18, 2012 Motion to Dismiss to the undersigned Magistrate Judge for a report and recommendation.

## ANALYSIS

In the instant motion, Mr. Armstrong moves to dismiss Plaintiff's Petition for an Order of Protection under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. In analyzing such a motion, the Court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). "The law is clear that when considering a motion

4

launches a factual attack against jurisdiction, [t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (internal quotation marks and citations omitted).

**A. Background**

Plaintiff Marcus Mosley is a career federal employee assigned as a Federal Safety Investigator for the Springfield, Illinois Division of the Department of Transportation, Federal Motor Carrier Safety Administration ("DOT").[1] Pursuant to a telecommuting agreement requested by Mr. Mosley, his federal workplace is his home at 6100 Forest Avenue, Gary, Indiana 46403. Defendant Timothy Armstrong is a career federal employee assigned as a Field Manager for the Springfield, Illinois Division of DOT. His duties include issuing work assignments to Mr. Mosley and reviewing Mr. Mosley's work.

In this case, Mr. Mosley filed a Petition for Protective Order against Mr. Armstrong, seeking an order of protection prohibiting Mr. Armstrong from "telephoning, contacting, or directly or indirectly communicating with [Mr. Mosley]." In his Declaration, Mr. Armstrong states that, if the Court were to grant the requested order, it would be impossible for Mr. Armstrong to perform his duties as a Field Manager to supervise Mr. Mosley. He also states that, if the Court were to grant the requested order, and Mr. Mosley were to remain in his federal employment, DOT would have no choice but to assign a different Field Manager to Mr. Mosley. Therefore, Mr. Armstrong explains that Mr. Mosley's request for relief is tantamount to requesting that the Court order DOT to assign a different Field Manager to Mr. Mosley.

---

[1] These facts are taken from the sworn Declaration of Timothy Armstrong, submitted as Exhibit 1 in support of the instant motion.

5

**B. Discussion**

Mr. Armstrong argues that, because the Civil Service Reform Act of 1978 ("CSRA") repealed the jurisdiction of federal district courts over personnel-related disputes of federal employees, the Court does not have jurisdiction over what Mr. Armstrong describes as an employment dispute.

The CSRA, which is codified in various sections of Title 5, established "a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena*, 60 F.3d 346, 347 (7th Cir. 1995) (citing *United States v. Fausto*, 484 U.S. 439, 443 (1988)). The United States Supreme Court has held that alternative legal remedies are not available to federal employees for matters within the CSRA's scope. *Fausto*, 484 U.S. at 448. Therefore, the CSRA "essentially preempted the field by superseding preexisting remedies for all federal employees." *Ayrault*, 60 F.3d at 348 (internal quotation marks and alterations omitted); *see also Richards v. Kiernan*, 461 F.3d 880, 884 (7th Cir. 2006) (discussing the comprehensive nature of the CSRA's remedial scheme and the resulting repeal of jurisdiction of federal district courts over those claims arising under the CSRA in the context of a plaintiff asking the court to carve out an exception to this rule for a *Bivens* claim brought under the First Amendment); *Snider v. Pekney*, No. 4:09-CV-37, 2010 WL 724506, *6 (N.D. Ind. Feb. 25, 2010) (Van Bokkelen, J.) (concerning a former postal worker who filed a civil complaint alleging a conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1983 and ruling that, because the alleged constitutional violation was related to the personnel action again him, the complaint was within the purview of the CSRA). As a result, a federal employee must raise employment-related disputes "through the Merit Systems Protection Board and appeal to the Federal Circuit." *Snider*, 2010 Wl

724506, at *6 (citing *Kannaby v. U.S. Army Corps of Eng'rs*, 53 F. App'x 776, 779 (7th Cir. 2002) (citing 5 U.S.C. § 7703)).

As noted above, Mr. Armstrong has stated in his Declaration that the predicted effect of the request in Mr. Mosley's Complaint, namely that Mr. Armstrong be prohibited from "telephoning, contacting, or directly or indirectly communicating with [Mr. Mosley]," would be to prevent Mr. Armstrong from performing his duties as a Field Manager supervising Mr. Mosley. Mr. Armstrong explains that, were the Court to grant this request and prohibit Mr. Armstrong from contacting Mr. Mosley, the DOT would have no choice but to assign a different Field Manager to Mr. Mosley.

Although the practical effect of a favorable ruling on the Petition for Protective Order may be that Mr. Armstrong would be prohibited from performing his duties as a Field Manager of Mr. Mosley and the DOT would have to assign a different Field Manager to Mr. Mosley, this result, if it were to occur, does not itself bring the dispute within the scope of the CSRA. In other words, the potential for an outcome that may affect who is Mr. Mosley's supervisor does not mean the underlying dispute itself necessarily constitutes a personnel matter arising under the CSRA. Nor does Mr. Armstrong explain in his brief how that potential practical outcome brings the allegations in the Petition for Protective Order for a restraining order within the CSRA, which would be necessary for the Court to lack subject matter jurisdiction over the dispute.

In the first Motion to Dismiss for failure to state a claim, Mr. Armstrong asserted that the actions he is alleged to have taken as set forth in Mr. Mosley's Petition for Protective Order constitute a "prohibited personnel practice" under 5 U.S.C. § 2302(b)(12) because, if true, they led to a "significant change" in Mr. Mosley's "working conditions" under 5 U.S.C. § 2302(a)(2)(A)(xi) that violate the merit system principle requiring that Mr. Mosley receive fair and equitable treatment with proper regard for his privacy and constitutional rights as articulated in 5 U.S.C. § 2301(b)(2).

7

Def. Mot., p. 3-4.[2] Without specifically identifying which allegations from the Petition for Protective Order support such an analysis, Mr. Armstrong reasoned that "[Mr. Mosley's] allegations, if true, would violate merit system principles and constitute a prohibited personnel practice" and summarily concludes that Mr. Mosley's claims are covered by the CSRA. *Id*. at p. 4.

The Court disagreed, noting that Mr. Mosley has not brought a civil complaint against Mr. Armstrong for an improper personnel action or for a constitutional violation. Rather, Mr. Mosley alleges in the Petition for Protective Order that he feared for his personal safety and the safety of his family. Notably, the Petition does not contain any allegations that Mr. Mosley is a federal employee, that Mr. Mosley works out of his home in Gary, Indiana, by permission of his federal employer, that Mr. Armstrong is his supervisor, or that Mr. Mosley receives work assignments and other communications from Mr. Armstrong either in person, by telephone, by mail, or by electronic mail. All of these facts were provided by Mr. Armstrong as background information in his first Motion to Dismiss. The only reference to his employment in Mr. Mosley's Petition for Protective Order is that "Mr. Armstrong submitted a[sic] ficticious[sic] dates and lied to attempt the agency to suspend me" and that "Mr. Armstrong works in Springfield IL. office." Petition ¶ 8.

Mr. Armstrong does not reassert this interpretation of the Petition either in his memorandum or in his Declaration offered in support of the Motion to Dismiss. As set forth above, because this

---

[2] The CSRA allows a plaintiff to bring a claim regarding any "prohibited personnel practice." *See Robbins v. Bentsen*, 41 F.3d 1195, 1202 (7th Cir. 1994). A "prohibited personnel practice" is defined as any action described in 5 U.S.C. § 2302(b). 5 U.S.C. § 2302(a)(1). Subsection (b) instructs that "[a]ny employee who has authority to take . . ., recommend, or approve any personnel action, shall not, with respect to such authority" engage in any one of twelve types of "prohibited personnel practices." *Id*. at § 2302(b). Once such "prohibited personnel practice" is taking a "personnel action" if "the taking of . . . such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title." *Id*. at § 2302(b)(12). One of the referenced merit system principles is that "[a]ll employees . . . should receive fair and equitable treatment in all aspects of personnel management . . . with proper regard for their privacy and constitutional rights." *Id*. at § 2301(b)(2). Finally, one of the eleven enumerated definitions of "personnel action," for the purposes of § 2302(b), is "any other significant change in . . . working conditions." 5 U.S.C. § 2302(a)(2)(A)(xi).

8

motion seeks dismissal for lack of subject matter jurisdiction under Rule 12(b)(1), the parties and the Court are not limited to the allegations in the Petition. Rather, the Court may look to matters outside the pleading, which, in this instance, is Mr. Armstrong's Declaration. Nothing in Mr. Armstrong's Declaration adds any factual allegations to suggest that the relief sought in the Petition is based on a civil service personnel dispute; instead, the focus is solely on the practical effect of a favorable ruling on the Petition. *See Whitman v. Dept. of Transp.*, 547 U.S. 512, 514 (2006) (reasoning that, if the alleged actions by the FAA constituted a "prohibited personnel practice" under 5 U.S.C. § 2302(b), the question in that case would be one of subject matter jurisdiction and, thus, remanding for the court of appeals to address that issue); *see also Paige v. Cisneros*, 91 F.3d 40, 42 (7th Cir. 1996) (finding that the district court did not have subject matter jurisdiction over the plaintiff's claims because Congress, through the CSRA, gave exclusive jurisdiction over civil service personnel disputes to the Merit Systems Protection Board); *Ayrault v. Pena*, 60 F.3d 346, 350 (7th Cir. 1995) (finding that the CSRA deprived the court of jurisdiction and remanding to the district court to dismiss for lack of jurisdiction); *Thayer-Ballinger v. United Sates Postal Service*, No. 1:11-CV-745, 2012 WL 253155, at *3 (S.D. Ind. Jan. 26, 2012) (declining to dismiss for lack of subject matter jurisdiction because the defendant had not shown that plaintiff's claims were preempted by the CSRA).

In the May 30, 2012 Report and Recommendation, this Court cited *Rosenthal v. United States*, in which the court found that it lacked subject matter jurisdiction over the plaintiff's requests for damages based on allegations of improper discipline, improper placement on administrative leave, and of intentional and negligent infliction of emotional distress brought in a civil complaint because the "CSRA repealed the jurisdiction of federal district courts over personnel related

9

actions." No. 97 C 1424, 1998 WL 312118, *3 (N.D. Ill. June 6, 1998) (citing *Paige*, 91 F.3d at 43 (citing *Fausto*, 484 U.S. 439)). This Court reasoned that in this case, in contrast with *Rosenthal*, Mr. Mosley is not seeking redress against Mr. Armstrong as his supervisor for a "prohibited personnel practice" nor does Mr. Mosley claim any right to the CSRA's comprehensive scheme of protections. Mr. Mosley has not alleged any causes of action such as intentional infliction of emotional distress, harassment, defamation, or discrimination among any number of other potential civil claims; he seeks only an order of protection.

On the instant Motion to Dismiss for lack of subject matter jurisdiction, the Court finds that, on its face, the Petition for Protective Order does not allege a personnel action arising under the CSRA and that Mr. Armstrong has not identified any evidence outside of the Petition to suggest otherwise. Thus, the Court does not lack subject matter jurisdiction. Again, should Mr. Mosley attempt to raise allegations of a "prohibited personnel practice" at a hearing on the Petition for Protective Order, such allegations would be beyond the scope of the relief requested in and provided by the Petition. If Mr. Mosley is, in fact, attempting to allege that Mr. Armstrong's actions caused a significant change in Mr. Mosley's working conditions that violated a law, rule, or regulation that implements or directly concerns the merit system principal that Mr. Mosley should receive fair and equitable treatment with proper regard for his privacy and constitutional rights, then any such allegations would have to be raised by a separate civil complaint.

## CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Judge Van Bokkelen deny the Motion of Defendant Timothy Armstrong to Dismiss for Lack of Subject Matter Jurisdiction [DE 16].

This Report and Recommendation is submitted pursuant to 28 U.S.C. § 636(b)(1)(C). Pursuant to 28 U.S.C. § 636(b)(1), the parties shall have fourteen (14) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court. The failure to file a timely objection will result in waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999); *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994); *The Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260-261 (7th Cir. 1989); *Lebovitz v. Miller*, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

Should Judge Van Bokkelen approve this Report and Recommendation, the Court will immediately set this matter for an in-person hearing on the Petition for Protective Order [DE 1] pursuant to Judge Van Bokkelen's Order [DE 4] that refers the Petition for an Order to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

SO ORDERED this 4th day of January, 2013.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record
      Pro se Plaintiff